UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| YU AN,<br><br>    Plaintiff,<br><br>v.<br><br>JANET NAPOLITANO, SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY, ET AL.,<br><br>    Defendants. | Case No. 5:13-CV-0600-EJD<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>**[Re: Docket Item Nos. 15, 16]** |

In this action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 702(2)(A), presently before the Court are Plaintiff Yu An's ("Plaintiff") and Defendant Secretary of the Department of Homeland Security, et al.'s ("Defendants") cross-motions for summary judgment. See Docket Item Nos. 15, 16.

## I. BACKGROUND

**A. Factual Background**

Plaintiff is a naturalized U.S. citizen who has filed a petition for an immigrant visa on behalf of her mother, Zhao Qi Wang ("Ms. Wang"), under the Immigration and Nationality Act ("INA") §204(a), 8 U.S.C. § 1154(a), by filing a Form I-130, Petition for Alien Relative. Ms. Wang, a Chinese national, was first admitted to the United States on October 9, 1996 as a B-1 nonimmigrant visitor for business. Her B-1 status was extended through July 9, 1997. On June 9,

1997, Ms. Wang petitioned for a change of status to F-1 nonimmigrant student status, which was approved on January 7, 1998.

On May 24, 1998, Ms. Wang married Chao Zhang Huang, a naturalized U.S. citizen. Mr. Huang filed a Form I-130 on behalf of Ms. Wang. At an interview before the U.S. Citizenship and Immigration Services ("USCIS") on March 19, 2002 in San Francisco, the agency determined that the marriage was fraudulent. The interview was conducted through an interpreter and consisted of questions regarding Mr. Huang's and Ms. Wang's residency and marriage. Both parties were questioned separately under oath. The USCIS claims that the statements made by Mr. Huang and Ms. Wang were inconsistent, both with each other and with previous statements, self-contradictory, and that both parties admitted in oral statements and written confessions that the marriage was fraudulent. The inconsistent testimony supported the finding of a fraudulent marriage.

According to Mr. Huang's testimony, he had lived in Florida since 1983, he came to California because his son wanted him to marry Ms. Wang, and he married Ms. Wang to help her stay in the United States. At first, Mr. Huang stated he had never seen Ms. Wang in Florida, but then said he guessed that he had seen her twice in Florida, and also stated that he came with Ms. Wang from Florida for the interview and intended to go back with her. He did not remember the last time they had seen each other and he did not seem to know where Ms. Wang lived or her phone number. Mr. Huang admitted that he and Ms. Wang were not staying with each other during his visit and that they had not slept together.

Ms. Wang stated during her interview that she lived in Napa when she met Mr. Huang, that they had lived together in San Francisco for their first two years of marriage and then moved together to Napa. She also stated that they had both lived in San Francisco for one month after they got married and then moved to Napa and that Mr. Huang had never lived anywhere else. Ms. Wang stated that Mr. Huang went to Florida during Christmas to visit his daughter and that she had gone for a week to visit him. She told the interviewer that Mr. Huang had been in San Francisco for a week because their apartment in Napa was being remodeled. Ms. Wang stated that she planned to live in Florida.

2

Case No. 5:13-CV-0600-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

In addition to inconsistencies about where they lived and how often they saw each other, there were also inconsistencies regarding Ms. Wang's family. Ms. Wang stated that her ex-husband was living in China and had never been to the United States, while Mr. Huang stated that Ms. Wang's ex-husband lived in Napa and owned a restaurant there. Furthermore, Mr. Huang could not remember Ms. Wang's daughter's name.

At the conclusion of his interview, Mr. Huang wrote and signed an affidavit in Chinese, his native language, which stated, "I admit this is a fraudulent marriage . . . I have never had a marital relationship with this woman . . . ." The same day, he withdrew his Form I-130 petition. Ms. Wang was asked why she married Mr. Huang and her answers included the fact that Mr. Huang needed someone to take care of him and that she wanted to bring her daughter from China.

About three months after the interview, on June 7, 2002, Mr. Huang filed a second Form I-130 petition on behalf of Ms. Wang and both parties submitted affidavits recanting their admission of marriage fraud. Mr. Huang's son, Wei Cong Huang, also submitted an affidavit in support of the petition. The government claims that the affidavits were written in English, Mr. Huang's and Ms. Wang's affidavits are nearly identical, and statements in the affidavits are inconsistent with statements made in the March 19, 2002 interview and documentary evidence submitted by the parties.

Mr. Huang and Ms. Wang were scheduled to appear for an interview with the USCIS on June 16, 2003, but neither appeared for the interview. The next day, the USCIS received a call requesting to reschedule the interview. On August 14, 2003, USCIS denied the Form I-130 petition due to abandonment. In a letter sent to Mr. Huang, the USCIS noted that the record reflected that Ms. Wang was an active participant in marriage fraud. Mr. Huang passed away on April 18, 2007.

**B. Procedural Background**

On April 25, 2008, Plaintiff filed her first Form I-130 petition on behalf of Ms. Wang. This form was initially denied by the USCIS on September 10, 2009 because the agency determined that Ms. Wang had previously engaged in marriage fraud to circumvent immigration laws. On October

3
Case No. 5:13-CV-0600-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

8, 2009, Plaintiff filed a motion to reopen the Form I-130 petition. The motion was granted and the USCIS reissued its decision denying the petition on March 2, 2010 because Ms. Wang was determined to have previously entered into a marriage to avoid immigration laws. The USCIS based its decision on "[a]dmission, under oath, by both parties, that the marriage was fraudulent . . . marriage was never consummated . . . separate residencies throughout their marriage; forty years difference in the ages . . . lack of documents . . . " and the fact that no evidence had ever been submitted to overcome the determination that the marriage was fraud, other than the affidavits dated March 27, 2002.

On March 31, 2010, Plaintiff filed a Form EOIR-29, Notice of Appeal to the Board of Immigration Appeals ("BIA"). In support of the appeal, Plaintiff's brief claimed that the video recording of the USCIS interview was incomplete because it did not show the circumstances surrounding Mr. Huang's signing of the affidavit. The brief further alleged that the interpreter was impatient, biased, and disqualified. The BIA issued its decision dismissing Plaintiff's administrative appeal on January 10, 2013. The BIA stated that the allegations made by Plaintiff were unsupported by the record and did not overcome the admissions of fraud.

On February 12, 2013, Plaintiff brought an action in this Court under the APA asking for declaratory relief and a writ of mandamus asking the Court to hold unlawful and set aside the order of the BIA and decisions of the USCIS in this matter and direct them to grant Plaintiff's Form I-130 petition. See Docket Item No. 1. Defendants filed the present Motion for Summary Judgment on June 28, 2013 and Plaintiff filed a cross-motion on July 29, 2013. See Dkt. Nos. 15, 16. Attached to her pleadings, Plaintiff included a new translation of the March 19, 2002 USCIS interview, as translated by Yu Chuen, a Mandarin translator and instructor at the Defense Language Institute of Monterey, California.

## II. LEGAL STANDARD

Under the APA, a reviewing court may set aside a final agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). The Supreme Court has held that the standard of review under 5 U.S.C. § 706(2)(A) is

4

Case No. 5:13-CV-0600-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

deferential, noting that a court is not empowered to substitute its judgment for that of the agency. Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Ins. Co., 463 U.S. 29, 43 (1983). The Court also noted that a reviewing court must conduct a searching and careful inquiry into the facts. Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416 (1971), overruled on other grounds by Califano v. Sanders, 430 U.S. 99, 105 (1977).

In reviewing an agency's decision under section 706(2)(A), a court "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Overton Park, 401 U.S. at 416. The agency must have considered the relevant data and "articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43 (quoting Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168 (1962)). For an agency decision to be upheld under the arbitrary and capricious standard, a court must find that evidence in front of the agency provided a rational and ample basis for its decision. Nw. Motorcycle Ass'n v. U.S. Dept. of Agric., 18 F.3d 1468, 1471 (9th Cir. 1994). Under the APA, a district court's review is limited to the administrative record to determine whether the federal agency considered relevant factors and reached conclusions that were not arbitrary or capricious. Id. at 1472.

A motion for summary judgment may be used to review agency administrative decisions within the limitations of the APA. Id. at 1481. A motion for summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). The moving party bears the initial burden of informing the court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

In deciding whether to grant summary judgment in an APA challenge, the district court "is not required to resolve any facts in a review of an administrative proceeding." Occidental Eng'g Co. v. I.N.S., 753 F.2d 766, 769 (9th Cir. 1985). The purpose of the district court "is to determine

5

whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." Id.

### III. DISCUSSION

Defendants move for summary judgment, arguing that there is substantial and probative evidence to support the USCIS's decision. Defendants claim that Mr. Huang's affidavit and Ms. Wang's oral confessions prove the marriage was fraudulent. Furthermore, independent of the confessions, the contradictory statements made by the two parties show that they did not intend to establish a life together. To qualify as a bona fide marriage, a marriage must be based on an actual and legitimate relationship and the focus of any inquiry is whether the parties intended to establish a life together. Nakamoto v. Ashcroft, 363 F.3d 874, 882 (9th Cir. 2004). The administrative record contains substantial evidence supporting the conclusion that the marriage was a fraud, including the forty year age difference between parties, the fact the marriage was never consummated, inconsistencies in testimony and documentation regarding residencies, the dearth of evidence demonstrating a shared life (only two joint bank account statements, two joint income tax returns, and the affidavits dated March 27, 2002), and factual inconsistencies between documents submitted to the USCIS and the parties' statements during the March 19, 2002 interview. See Agyeman v. INS, 296 F.3d 871, 882-83 (9th Cir. 2002) ("Evidence of the marriage's bona fides may include: jointly-filed tax returns; shared bank accounts or credit cards; insurance policies covering both spouses; property leases or mortgages in both names; documents reflecting joint ownership of a car or other property; medical records showing the other spouse as the person to contact; telephone bills showing frequent communication between the spouses; and testimony or other evidence regarding the couple's courtship, wedding ceremony, honeymoon, correspondences, and shared experiences").

Additionally, Defendants claim that the parties' confessions were voluntary and there was no coercion involved. Furthermore, Defendants argue that Plaintiff failed to present documentary evidence in a timely manner to support the assertion that the interpreter hampered effective communication during the interview and that even if there were errors in translation, they were

6

Case No. 5:13-CV-0600-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

harmless errors.  Finally, Defendants assert that Plaintiff's request for a writ of mandamus fails because the USCIS does not have a non-discretionary duty to approve the Form I-130 petition. The Mandamus Act applies only where the official's duty is non-discretionary.  See Patel v. Reno, 134 F.3d 929, 931 (9th Cir. 1997).

Plaintiff cross-moves for summary judgment claiming the USCIS's decision is not based on substantial and probative evidence.  Plaintiff claims that the conduct of the interview and the demonstrated bias and misinterpretation on the part of the Mandarin interpreter at the interview undercut any claim that the interview was fair or in accord with the requirements of due process. The interpreter's mistakes furthered the parties' apparent contradictory statements, as the interviewer's questions were not properly interpreted.  Plaintiff contends, for example, that when Ms. Wang told the interviewer that Mr. Huang has Alzheimer's disease, which should have alerted the interviewer that Mr. Huang was mentally impaired, the interpreter told the interviewer that Mr. Huang was on medication but that Ms. Wang said it would not affect his thinking.  When the interviewer asked Ms. Wang a series of questions, she asked the interpreter which part of the question she should answer and the interpreter told the interviewer Ms. Wang was asking her what to say, turning her question into a credibility damaging statement.

Further, Plaintiff argues that while allowing Ms. Wang to stay in the U.S. was a factor in the couple's decision to marry, it was not a dispositive factor.  When the interviewer asked if that was a reason for the marriage, the parties agreed that it was, but also stated that they were husband and wife and lived together after the marriage.  Finally, Plaintiff argues that although Mr. Huang was induced to sign a statement that his marriage was fraudulent, within two weeks he signed an affidavit repudiating his previous statement and explaining that his marriage was genuine.

As discussed above, the standard for review of agency decisions under the APA is highly deferential.  See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984) ("[w]e have long recognized . . . the principle of deference to administrative interpretations"). Especially in the context of immigration policy, the Ninth Circuit has determined that review is "especially deferential."  Jang v. Reno, 113 F.3d 1074, 1077 (9th Cir. 1997).  8 C.F.R. §

7

Case No. 5:13-CV-0600-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

204.2(a)(1)(ii) mandates denial of a petition for immigrant visa classification filed on behalf of any alien for whom there is substantial and probative evidence of an attempt or conspiracy to commit marriage fraud. "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consol. Edison Co. of New York v. N.L.R.B., 305 U.S. 197, 229 (1938). To reverse a decision under this standard, "the evidence must be so compelling that no reasonable factfinder could fail to find the facts were as the alien alleged." Singh v. Reno, 113 F.3d 1512, 1514 (9th Cir. 1997). When reviewing agency decisions, courts are limited to reviewing the closed administrative record, with few exceptions.[1] Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv., 450 F.3d 930, 943 (9th Cir. 2006).

Even without considering the written confession from Mr. Huang, the USCIS's decision was supported by substantial evidence in the record, which permitted the agency to reach its decision. The Court must only decide whether there was an abuse of discretion, and here it finds that there was no such abuse because there is evidence in the record to support the USCIS's decision. The inconsistent testimony given by the parties, the lack of evidence of an "intent to establish a life together", the factual inconsistencies between submitted documents and parties' statements, no submission of any additional documentation in support of the marriage after the USCIS interview, plus the existence of a forty-year age difference and the fact that the marriage was never consummated, taken as a whole support the USCIS's decision.

In similar cases, this Court has upheld the USCIS's decisions regarding marriage fraud. In Avitan v. Holder, petitioner made a written admission of marriage fraud during a USCIS interview, which she later retracted, claiming that her admission had been coerced under threat. Avitan v. Holder, No. C-10-03288, 2011 WL 499956, at *3 (N.D. Cal. Feb. 8, 2011). Petitioner filed two subsequent I-130 petitions, which were both denied. The USCIS offered evidence, other than her previous confession, to support the decision, including that petitioner did not show up to the final I-130 interview and did not submit any documentation substantiating her illness, petitioner did not

---

[1] The instances in which extra-record materials are allowed include: (1) if necessary to determine whether the agency has considered all relevant factors; (2) when the agency has relied on materials outside the record; (3) when necessary to explain technical terms or complex subject matter; or (4) when plaintiffs make a showing of agency bad faith. Ctr. for Biological Diversity, 450 F.3d at 943.

8
Case No. 5:13-CV-0600-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

provide any new evidence supporting the bona fides of the marriage after the first two I-130 petitions were denied, and petitioner and beneficiary gave inconsistent answers in the USCIS interview. Id. at *11. The circumstances in that case are similar to the facts at hand. See also Garcia-Lopez v. Aytes, No. C-09-02592, 2010 WL 2991720, at *5 (N.D. Cal. July 28, 2010) (in addition to a confession by one party, where the record contained contradictory statements made by the beneficiary, lack of photographs of the couple, letters between the couple, or statements from wedding attendants, there was adequate reason to find marriage fraud); Tandel v. Holder, No. C-09-01319, 2009 WL 2871126 (N.D. Cal. Sept. 1, 2009) (where the USCIS was presented with cont0radictory evidence, the Court found that there was substantial evidence to support the USCIS's revocation decision).

Furthermore, whether or not the new translation of the interview can be considered by the Court is irrelevant, because Plaintiff introduces it to support the proposition that some questions and answers were incorrectly translated, but Plaintiff never shows that the errors rise to a level above harmless error. Furthermore, the USCIS does not contend that its decision was made based only on the answers given at the interview, but rather also on a lack of evidence in the general record that would support the finding of a bona fide marriage.

In light of all the evidence presented supporting the USCIS's decision, and the deferential standard that courts must apply in reviewing agency decisions, the Court GRANTS Defendants' Motion for Summary Judgment and DENIES Plaintiff's Cross-Motion for Summary Judgment. Since this order effectively resolves this case, all previously-set deadlines and hearings, including trial dates, are VACATED. Judgment shall be entered in favor of Defendants and the clerk shall close this file.

**IT IS SO ORDERED**

Dated: Feb. 11, 2014

EDWARD J. DAVILA
United States District Judge

Case No. 5:13-CV-0600-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT